UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 04-CR-10059-MEL |
| | ) | |
| GEORGE A. GRACIE | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM**

The United States submits the following response to Defendant George Gracie's ("Gracie") April 19, 2005 Sentencing Memorandum. In his Sentencing Memorandum, Gracie does not contest the calculated guidelines range, but instead argues that he should receive a probationary sentence because the "offense is a direct result of his gambling addiction." The United States opposes Gracie's request for a sentence below the guidelines range for the following reasons.

It is well settled in this Circuit that Gracie's purported gambling addiction is not a basis to impose a sentence below the guidelines range. Although Gracie claims that "it does not matter" whether, pre-Booker, a departure would be warranted, the fact is that a gambling addiction is not a basis for departure below the prescribed guidelines range. Although Gracie refers to three cases in support of the proposition that a gambling addiction could form the basis of a departure, First Circuit authority appears to reject that proposition. See United States v. Harotunian, 920 F.2d 1040, 1047 (1st Cir. 1990) (where the First Circuit upheld the district court's rejection of the defendant's argument that his gambling addiction should decrease his sentence; "the guidelines general purpose of deterrence would be ill served by discounting

appellant's sentence on this basis . . . . such a dependence [on gambling] would be akin to drug and alcohol addiction – considerations to which the Sentencing Commission assigned little weight.").

Even if the Court were to agree that a gambling addiction is a basis for reducing a sentence below the guidelines range, Gracie has not shown an appropriate basis to do so under the circumstances of this case. To begin with, Gracie's crime involves an obscene abuse of trust. The Taxi Fund – a benevolent organization that for 30 years was dedicated to providing financial support for educational opportunities to taxi industry employees and their children – entrusted everything it had, all of its assets, to Gracie's care and oversight. Gracie rewarded the faith the Taxi Fund showed in him by taking nearly everything for himself. Gracie's conduct not only damaged the organization, but destroyed it.

Worse, Gracie has, to date, shown utterly no remorse for the harm he has caused. So far as the United States is aware, Gracie has not repaid any of the funds he stole from the Taxi Fund – even though he had the ability to repay a substantial portion of what he stole. Gracie's financial records show that in late 2003 through April 2004, Gracie withdrew approximately $100,000 from a Fidelity IRA account. So far as the United States can determine, Gracie provided none of the withdrawn IRA funds to reimburse the Taxi Fund. And while Gracie may claim that the funds went to feed his gambling addiction, he has provided no independent corroboration that the funds were, in fact, spent for that purpose.

Indeed, Gracie's pattern of withdrawal activity from the Fidelity IRA account suggests something other than an uncontrollable need to obtain gambling funds. Gracie began withdrawing the funds in late 2003 through April 2004. Perhaps not coincidentally, the Taxi

Fund filed suit against Gracie in 2003. Gracie also made most of the withdrawals from the IRA in amounts below $5,000. He also accelerated the number of withdrawals from the account after he received a letter from the United States informing him that he was a target of an investigation for his theft from the Taxi Fund. Gracie then continued to withdraw the funds from the IRA account after he had been indicted, after his initial appearance, and after he received court-appointed counsel. Gracie's pattern does not suggest withdrawal of funds to feed a gambling addiction.

Yet even if Gracie were able to substantiate that he spent the funds he withdrew from his Fidelity IRA to feed his gambling addiction, the very fact that he had those funds available to him in 2003 and 2004 significantly undermines his contention that the "motivation for the crime so clearly was an uncontrolled addiction." The existence of the Fidelity IRA funds in 2003 show that Gracie's theft from the Taxi Fund was not some uncontrolled act of desperation. Gracie's theft did not come after his own legitimate sources of gambling funds had dried up, as the letter Gracie has submitted from the Mount Auburn Hospital social worker seems to assume. Rather, Gracie stole from the Taxi Fund while he was, at the same time, preserving his own retirement fund. This shows that Gracie made a clear moral choice: steal from the Taxi Fund before using his nest egg. This is not, therefore, a situation in which the theft would not have occurred but for the addiction. Gracie could have used his own money; and the Taxi Fund might not have been harmed.[1]

---

[1] The facts of this case are thus very different from those facing the court in United States v. Iaconetti, 59 F. Supp.2d 139 (D. Mass. 1999), where the defendant "strove to pay the debts--first from his personal resources, then the business, and finally his family" before committing a crime to pay off gambling debts owed to a loanshark.

3

Finally, if the Court decides to impose a sentence below the guidelines range, some period of imprisonment is appropriate. Gracie asserts that specific deterrence will not be served by a period of imprisonment. Yet Gracie's own submissions concede that the only reason Gracie stopped gambling is because he ran out of money. There is no assurance that if Gracie were to gain access to funds from some other source – whether legitimately or otherwise – that he would not gamble with that money as well. In short, a sentence of probation for an embezzler like Gracie, who systematically over a period of four years steals $144,000 from a scholarship fund effectively depleting that fund of all of its assets, would not serve the purposes of sentencing set forth in 18 U.S.C. § 3553. Probation would not reflect the seriousness of the offense, serve the interests of either specific or general deterrence, or protect the public from further crimes.

## Conclusion

For the foregoing reasons, as well as those set forth in the United States' Sentencing Memorandum, the Court should impose a sentence in accordance with the United States' recommendation.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Jack W. Pirozzolo
Jack W. Pirozzolo
Assistant U.S. Attorney
United States Courthouse, Suite 9200
1 Courthouse Way
Boston, MA  02210
(617) 748-3189

Dated: April 19, 2005

4

**CERTIFICATE OF SERVICE**

      This is to certify that on April 19, 2005, I served the foregoing document, via electronic means, upon Miriam Conrad, counsel for the defendant.

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo
